RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0253P (6th Cir.)
File Name: 01a0253p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

SAEID B. AMINI,
　　　　*Plaintiff-Appellant,*

　　　　*v.*　　　　　　　　　　No. 00-3550

OBERLIN COLLEGE,
　　　　*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-00274—Lesley Brooks Wells, District Judge.

Submitted: June 8, 2001

Decided and Filed: August 2, 2001

Before: KEITH, BATCHELDER, and MOORE, Circuit
Judges.

———————————

**COUNSEL**

**ON BRIEF:** Michael J. Frantz, Michael N. Chesney,
FRANTZ WARD, Cleveland, Ohio, for Appellee. Saeid B.
Amini, Cleveland, Ohio, pro se.

1

—————————

## OPINION

—————————

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Saeid Amini ("Amini" or "plaintiff") appeals the district court's dismissal of his Title VII and Age Discrimination in Employment Act ("ADEA") claims as time-barred under the 300-day limitations period applicable to both claims, and the district court's dismissal of his 42 U.S.C. § 1981 claim of race discrimination due to plaintiff's failure to allege sufficient facts showing that Oberlin College ("Oberlin") took into account his race in making its employment decision. We **AFFIRM** the district court's decision dismissing plaintiff's Title VII and ADEA claims as time-barred, but **REVERSE** and **REMAND** the district court's decision dismissing plaintiff's § 1981 claim of race discrimination.

## I.  BACKGROUND

Plaintiff, Saeid Amini, "is a 45 year old Iranian born Muslim male living in the United States lawfully since August 28, 1977." Joint Appendix ("J.A.") at tab 1, p. 2 (Compl.). According to his complaint, Amini earned his Ph.D. in Statistics from the University of Iowa, and has developed and taught more than ten different math and statistics courses for both undergraduate and graduate students. Amini has previously been employed at the National Center for Toxicological Research, the National Institute of Environmental Health, the Deborah Heart and Lung Center, and the Case Western Reserve University ("CWRU") School of Medicine. Amini worked for ten years at CWRU School of Medicine, and for five years taught as an associate professor at the medical school. While at CWRU, the plaintiff earned a law degree at CWRU's School of Law. Amini currently "is in private legal practice and teaches statistics part time in various colleges." J.A. at tab 1, p. 3 (Compl.).

name just a few. *Id*. at 611-13. Here, Amini alleges discrimination based on his "Middle Eastern" race. This clearly falls within the Supreme Court's expansive notion of "race" for purposes of a § 1981 discrimination claim, and thus Amini's allegation that Oberlin discriminated against him by refusing to hire him because of his race is sufficient to state a redressable claim under § 1981. We **REVERSE** the district court's decision dismissing Amini's § 1981 claim.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision dismissing Amini's Title VII and ADEA claims, and **REVERSE** and **REMAND** the district court's decision dismissing plaintiff's § 1981 claim of race discrimination for further proceedings.

*Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted) (emphasis added). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

In this case, a copy of Amini's EEOC charge clearly was attached to his complaint and referenced therein. J.A. at tab 1, p. 5 (Compl.) ("On December 9, 1999, Plaintiff finally filed a charge of Title VII and Age Discrimination with the EEOC, Charge No. 220A00315."). Furthermore, there is no question that the EEOC charge, the filing of which was a precondition to Amini bringing this suit, is central to his discrimination claim. Thus, the district court erred in failing to consider the facts alleged in Amini's discrimination charge when deciding this 12(b)(6) motion.

In his charge, Amini states: "I believe I was discriminated against because of my race, Middle Eastern, national origin, Iranian, and religion, Muslim, in violation of Title VII of the Civil Rights Act of 1964, as amended and my age, 45, in violation of the Age Discrimination in Employment Act." J.A. at tab 1, EEOC charge. Although the district court was technically correct in noting that Amini's complaint indicated only plaintiff's national origin, and not his race, in the discrimination charge attached to his complaint, Amini more specifically claims that he was discriminated against based on his "Middle Eastern" race. J.A. at tab 1, EEOC charge.

In *Saint Francis College*, the Supreme Court took a broad view of what constitutes prohibited discrimination on the basis of "race" under § 1981, holding that discrimination based on "ancestry or ethnic characteristics" constituted race-based discrimination under the statute. Under this conception of race, one can state a cognizable § 1981 claim if he can allege discrimination based on any of a number of ethnicities, including: German, Italian, Spanish, Russian, and "Arab," to

In early October 1998, Amini applied for a tenure-track, four-year faculty position in Oberlin's Department of Mathematics. On October 14, 1998, Amini received a letter from Jeffrey Witmer, Professor of Mathematics at Oberlin, acknowledging the receipt of Amini's application. Oberlin had no further contact with Amini until he received a letter, dated January 12, 1999, from Witmer informing him that Oberlin had filled its mathematics faculty position. The letter stated, in part: "I regret to report that we have now filled our statistics position for next year. I am sorry that we could not pursue more energetically more of the excellent candidates who applied." J.A. at tab 1, Ex. C (Witmer Letter, 1/12/99). The letter did not state whom Oberlin had hired to fill the position.

Following receipt of the letter, Amini made several attempts to learn whom Oberlin had hired. According to his complaint, Amini's attempts consisted of regularly checking Oberlin's web site to see if information on the new faculty member had been posted, as well as a personal visit to the campus and Oberlin's Mathematics Department in March 1999. Amini claims that, as late as July 1999, Oberlin still had not posted the name of its new statistics professor on its web site. At no time in his complaint does Amini allege that he contacted anyone at Oberlin College in an attempt to learn whom Oberlin had hired for the faculty position.

On September 16, 1999, the plaintiff again visited Oberlin's web site and this time discovered that Dr. Chris Andrews, an Oberlin graduate and white male under the age of forty, had been hired for the statistics position. According to Amini's complaint, Andrews had only one year of teaching experience as compared with Amini's fifteen years' experience, and Andrews had published only two professional articles as compared with Amini's more than seventy articles. Based on Andrews's alleged inferior credentials, Amini believed that Oberlin's decision not to hire him constituted discrimination on the basis of "race, religion, age and country of origin." J.A. at tab 1, p. 5 (Compl.).

In late October 1999, Amini attempted on several occasions to schedule an appointment with the Equal Employment Opportunity Commission ("EEOC") so that he could file a charge against Oberlin. Amini did not file his charge with the EEOC until December 9, 1999.

On January 14, 2000, the EEOC dismissed plaintiff's charge as untimely and then issued him a right to sue letter. On January 31, 2000, Amini filed a complaint against Oberlin, alleging that the college intentionally discriminated against him on the basis of race, national origin, and religion in violation of Title VII and 42 U.S.C. § 1981. Amini also alleged that Oberlin discriminated on the basis of age in violation of the ADEA. Thereafter, Oberlin filed a motion to dismiss Amini's claims. Oberlin claimed that both Amini's Title VII and ADEA claims were filed beyond the 300-day time period given the plaintiff in which to file a charge with the EEOC. Oberlin moved to dismiss Amini's § 1981 claim on the ground that the allegations in his complaint supported only a claim of national origin discrimination, a claim Oberlin contends is not cognizable under § 1981.

The district court granted Oberlin's motion to dismiss. The court first noted that "[b]oth Title VII and the ADEA require potential litigants to file charges with the EEOC within 300 days of the alleged unlawful employment action[.]" J.A. at tab 5, p. 5 (Dist. Ct. Op.). Because more than 300 days had elapsed from the date of the letter notifying Amini that he was no longer being considered for the mathematics faculty position until he filed his discrimination charge with the EEOC (329 days elapsed in this time, according to Amini), and because the factors used to determine if equitable tolling relief is warranted did not weigh in plaintiff's favor, the court dismissed Amini's Title VII and ADEA claims as time-barred.

The district court also agreed with Oberlin's argument regarding Amini's § 1981 claim. Noting that § 1981 deals with claims of racial discrimination, as opposed to discrimination on the basis of age, sex, and national origin,

limitations in a discrimination action until the plaintiff learns sufficient facts that would lead him to suspect that the defendant acted with discriminatory intent. As the *Hill* court stated, "'it might be years before a person apprehends that unpleasant events in the past were caused by illegal discrimination. In the meantime, under plaintiff's theory, the employer would remain vulnerable to suits based on these old acts.'" *Id.* (quoting *Merrill v. S. Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) (brackets omitted)). We **AFFIRM** the district court's decision dismissing Amini's Title VII and ADEA claims as time-barred.

## C.  Amini's § 1981 Claim

The district court, in dismissing plaintiff's 42 U.S.C. § 1981 claim of race discrimination, stated that Amini did not allege sufficient facts in his complaint to demonstrate that Oberlin took into account his race, ancestry, or ethnic background in making its employment decision. In arriving at this decision, the court focused on the following language from Amini's complaint: "Plaintiff is a 45 year old Iranian born Muslim male living in the United States lawfully since August 28, 1977." J.A. at tab 1, p. 2 (Compl.). The court stated that this was the only information in Amini's complaint relating to his racial or ethnic background, and that this passage actually only related to Amini's religion and national origin. The Supreme Court has held in *Saint Francis College* that only claims of racial, as opposed to national origin, discrimination are cognizable under § 1981. *Saint Francis Coll.*, 481 U.S. at 613. Relying on this precedent, the district court dismissed Amini's § 1981 claim.

Although the district court's statement of the law is correct, the court erred in failing to consider information contained in Amini's EEOC filing, a document referenced in the complaint and attached thereto. "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, *and exhibits attached to the complaint*, also may be taken into account."

Based on the facts alleged in the complaint, we simply cannot state that Amini acted with the requisite diligence in his attempts to ascertain the information which ultimately led him to file a discrimination charge. Approximately nine months passed after Amini learned that he had not been hired for the statistics position before he finally discovered the identity of Oberlin's new math professor on the College's web site. In all of that time, there is no indication that Amini contacted anyone at Oberlin to learn whom it had hired for its vacant faculty position.

Despite the fact that it took Amini approximately nine months to learn whom Oberlin had hired, had he acted with reasonable diligence after September 16, 1999, he still would have had a substantial period of time in which to file a timely EEOC charge. Amini's 300-day clock began ticking when he received the January 12, 1999 letter from Oberlin informing him that he had not been hired. Thus, as of September 16, 1999, Amini still had approximately two months remaining until his filing deadline. Instead, Amini waited another twelve weeks before finally filing his claim on December 9, 1999, well beyond the 300-day period of limitations. Amini's pursuit of his rights in this case was far from diligent, and the facts of this case provide us with no basis for granting equitable tolling relief.

The case for equitable tolling relief would be different had Oberlin refused or delayed Amini's efforts to learn whom the College had hired for its statistics position. In this case, however, Amini does not allege that Oberlin engaged in any inequitable conduct. With none of the traditional equitable tolling factors weighing in Amini's favor, apart from the apparent lack of prejudice to Oberlin from the twenty-nine day delay, and with no allegations of wrongdoing on the part of Oberlin that could have caused him to miss his filing deadline, we are in no position to award Amini equitable tolling relief. As we stated in dicta in *Hill v. United States Department of Labor*, 65 F.3d 1331, 1337 (6th Cir. 1995), we will not, absent other circumstances weighing in favor of equitable tolling, suspend the running of the statute of

the court held that plaintiff's complaint did not adequately allege that Oberlin took into account his race, ancestry, or ethnic background in making its employment decision. Instead, according to the district court, the only facts Amini stated in his complaint regarding this matter were the following: "Plaintiff is a 45 year old Iranian born Muslim male living in the United States lawfully since August 28, 1977." J.A. at tab 1, p. 2 (Compl.). Citing to the Supreme Court's decision in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987), the district court stated that, because Amini's complaint did not "mention his race, ancestry, or ethnic background[,]" Amini had not adequately alleged a claim of racial discrimination under § 1981. J.A. at tab 5, p. 8 (Dist. Ct. Op.). Amini's appeal to this court followed.

## II.  ANALYSIS

### A.  Standard of Review

We review de novo a district court's decision dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(6). *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 445-46 (6th Cir. 2000). We view the complaint in the light most favorable to the plaintiff, treat all well-pleaded allegations therein as true, and will dismiss the plaintiff's claims only if it is without doubt that the plaintiff "can prove no set of facts in support of the claims that would entitle him to relief." *Id*. The district court's determination that the 300-day period in which to file a discrimination charge with the EEOC was exceeded is also reviewed de novo. *Southwest Williamson County Cmty. Ass'n, Inc. v. Slater*, 173 F.3d 1033, 1035 (6th Cir. 1999). Finally, "where the facts are undisputed or the district court rules as a matter of law that equitable tolling is unavailable, we apply the *de novo* standard of review to a district court's refusal to apply the doctrine of equitable tolling; in all other cases, we apply the abuse of discretion standard." *Dunlap v. United States*, 250 F.3d 1001, 1007 n.2 (6th Cir. 2001). Because this court must assume all factual allegations in Amini's complaint are true, there are no factual disputes in

this case that would preclude de novo review of the equitable tolling issue.

## B. The Timeliness of Amini's Title VII and ADEA Claims

Plaintiffs must typically file a timely discrimination charge with the EEOC in order to bring a Title VII lawsuit. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999), *cert. denied*, 528 U.S. 1154 (2000). Pursuant to the statutory language of Title VII, the applicable statute of limitations begins to run from the date of "the alleged unlawful employment practice[.]" 42 U.S.C. § 2000e-5(e)(1). Title VII has a dual statute of limitations, which we have explained as follows:

> Usually, if the alleged discrimination occurred more than 180 days prior to the plaintiff's filing of an EEOC charge, claims implicating these actions are barred. However, if the alleged unlawful practice occurs in a "deferral state," in this case Ohio, which has enacted its own laws prohibiting discrimination in employment, the plaintiff must file suit within 300 days of the alleged discriminatory act.

*Alexander*, 177 F.3d at 407 (citation omitted). The alleged unlawful employment practice in this case did occur in Ohio, a deferral state, and thus the 300-day period in which to file an EEOC charge under Title VII applies. The same 300-day time limit for filing a charge with the EEOC applies in age discrimination cases brought under the ADEA. 29 U.S.C. § 626(d).

While neither party disputes that the 300-day period of limitations applies to this case, the parties do disagree on when the 300-day period should begin to run. Whereas Amini argues that the 300-day period should not begin to run until the facts that would support a charge of discrimination are apparent (or should be apparent) to a reasonable person, Oberlin claims that the time should run from the date "the employment action at issue is communicated to the plaintiff[,]" not from the date on which the plaintiff discovers

has not alleged that Oberlin engaged in any misrepresentations or other wrongdoing that caused him to miss his filing deadline, *Andrews*, 851 F.2d at 151, nor does he claim that Oberlin attempted to prevent him from discovering who had been hired for the faculty position.

In looking to the five factors typically considered in equitable tolling cases, it is clear that none of them weigh heavily in favor of granting equitable tolling relief in this case. Amini does not claim to have lacked knowledge or notice of the filing requirement. In his brief, Amini admits that he was aware of both the EEOC filing requirements and the applicable 300-day limitations period. Appellant's Br. at 18. Although it is unclear how the grant of equitable tolling relief to Amini would be prejudicial to Oberlin, the Supreme Court has held that this factor alone is not a sufficient basis for allowing equitable tolling relief to the plaintiff. *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984).

Thus, the last relevant factor to consider is Amini's diligence in pursuing his rights. Amini claims that he acted diligently in his attempts to uncover whom Oberlin had hired for its statistics position. We disagree. Nowhere in Amini's complaint does he claim that he ever contacted anyone at Oberlin or its Department of Mathematics to learn whom the College had hired to fill its faculty vacancy. Instead, Amini's efforts were limited to "regular" computer visits to Oberlin's web site, J.A. at tab 1, p. 4 (Compl.), as well as a physical visit to the campus in March 1999 in which Amini searched the Mathematics Department's announcement boards for information on the new hire. While we assume as true Amini's claim that Oberlin had not posted any information on its web site regarding its new professor as late as July 1999, it appears from the complaint that Amini did not check the site again until September 16, 1999. J.A. at tab 1, p. 4 (Compl.). It was on September 16, 1999 that Amini finally discovered whom Oberlin had hired. Nevertheless, Amini did not file his charge with the EEOC until December 9, 1999, twelve weeks later.

1)  lack of notice of the filing requirement;

2)  lack of constructive knowledge of the filing requirement;

3)  diligence in pursuing one's rights;

4)  absence of prejudice to the defendant; and

5)  the plaintiff's reasonableness in remaining ignorant of the particular legal requirement for filing his claim.

*Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)); *see also Dunlap*, 250 F.3d at 1009 (stating that the test enunciated in *Andrews v. Orr* has been "uniformly applied to the issue of equitable tolling in this Circuit."). As we stated in *Graham-Humphreys*, the five factors considered in deciding whether to equitably toll a limitations period are not comprehensive, nor is each of the five factors relevant in all cases. *Graham-Humphreys*, 209 F.3d at 561. The decision whether to equitably toll a period of limitations must be decided on a case-by-case basis. *Truitt*, 148 F.3d at 648.

The district court, applying the five-factor test, held that equitable tolling was not warranted in this case. First, the court held that, because Amini is a lawyer, he should be considered as having both actual and constructive notice of the 300-day filing period. The district court also held that Amini did not pursue his rights with the requisite diligence. The court noted that the plaintiff had made no accusations that Oberlin had misrepresented facts or interfered with his efforts to investigate, and further questioned the plaintiff's failure to file a charge with the EEOC for approximately three months following his discovery of Oberlin's choice for the faculty position.

We agree with the district court that equitable tolling is not warranted in this case. We first note that, unlike most cases in which equitable tolling relief is granted, in this case, Amini

that the action was unlawful. Appellee's Br. at 4. After reviewing relevant Supreme Court and Sixth Circuit precedent, as well as the statutory language of Title VII and the ADEA, we are confident that it is Oberlin's argument that must prevail.

We recently addressed the issue of when the limitations period for an employment discrimination claim should begin to run in *EEOC v. United Parcel Service, Inc.*, 249 F.3d 557 (6th Cir. 2001). In *United Parcel Service*, we stated that "[t]he United States Supreme Court has held that the limitations period does not begin to run on a claim for employment discrimination until an employer makes and communicates a final decision to the employee. Once the employee is aware or reasonably should be aware of the employer's decision, the limitations period commences." *Id.* at 561-62 (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). Our discussion in *United Parcel Service* makes clear that the starting date for the 300-day limitations period is when the plaintiff learns of the employment decision itself, not when the plaintiff learns that the employment decision may have been discriminatorily motivated. Indeed, this focus on the discriminatory act is consistent both with Supreme Court precedent and the statutory language of Title VII and the ADEA.

In *Ricks*, the Supreme Court focused on the timeliness of a professor's attempt to file a discrimination charge with the EEOC under Title VII. The Court ultimately held that the professor's claim was time-barred, stating that Title VII's limitations period should run from the date on which the allegedly discriminatory decision not to grant the professor tenure was communicated to the professor, not from the date on which the professor ultimately lost his teaching position. *Ricks*, 449 U.S. at 258. The Court held that the proper focus when determining the starting point of the limitations period "is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Id.* (internal quotation omitted).

The statutory language of Title VII and the ADEA is also consistent with this approach. Title VII states that a discrimination charge must be filed "within three hundred days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). The ADEA uses this same language in its period of limitations provision. 29 U.S.C. § 626(d)(2). Given the statutes' focus on "the alleged unlawful employment practice[,]" it would contradict the statutory language to begin running the limitations periods from the time at which the facts supporting a charge of discrimination become apparent to a reasonable person, as opposed to the date the discriminatory employment practice itself is communicated to the plaintiff. Thus, we reaffirm our practice of running the Title VII and ADEA limitations provisions from the date on which the alleged discriminatory act (in this case, the failure to hire Amini) was communicated to the plaintiff.

By arguing that the limitations period for his Title VII and ADEA claims should not begin to run until the facts supporting a charge of discrimination become apparent to a reasonable person, Amini has confused the difference between the accrual of his 300-day period of limitations and the equitable tolling of that limitations period. Rather than an attempt to alter the statutorily-mandated starting date of the limitations period, we believe that Amini's efforts to stop the 300-day clock are better categorized as arguments in favor of an equitable tolling of the statute of limitations.

In *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995), the U.S. Court of Appeals for the Seventh Circuit addressed arguments similar to those Amini makes in this case. In *Thelen*, the plaintiff claimed that the 300-day period in which to file his age discrimination claim with the EEOC should not have accrued until he learned, well after his termination, that he had been replaced by a younger employee, and thus that he may have been a victim of age discrimination. The plaintiff claimed that he did not discover his injury until he learned that a discriminatory motive may have been behind his termination. The Seventh Circuit stated,

however, that the plaintiff's argument was misplaced. The court explained that the question of when a plaintiff learns that the alleged unlawful employment practice may have been discriminatory has nothing to do with the accrual of a discrimination action under the 300-day period of limitations. *Id*. at 267. Rather, said the court, "[a] plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful." *Id*. The Seventh Circuit explained that the plaintiff in its case was not arguing that the statute of limitations should not begin to accrue until the discriminatory motive is discovered, but instead was "really insisting that the limitations clock should be equitably tolled for the time in which he was unable to determine that his injury (of which he was aware) — the layoff — was due to wrongdoing." *Id*. (quotation omitted).

We agree with the Seventh Circuit's analysis in *Thelen*. Amini learned of his injury when Oberlin informed him that he would not be hired for its vacant statistics position. As stated, the proper focus for purposes of determining the commencement of the 300-day limitations period is on the discriminatory act itself and when that act was communicated to the plaintiff. Amini's attempt to stop the running of the 300-day clock until he discovered the facts that led him to suspect discrimination is best addressed as a question of equitable tolling. We now turn to this issue.

The Supreme Court has held that the 300-day period of limitations for filing a charge with the EEOC "is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). This circuit has repeatedly cautioned that equitable tolling relief should be granted only sparingly. *Dunlap*, 250 F.3d at 1008-09; *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). In determining whether the equitable tolling of the EEOC filing period is appropriate in a given case, we have consistently taken into consideration the following five factors: