Glenn **HARDY**, Plaintiff–Appellant,

v.

**MIDLAND ENTERPRISES, INC.,**
Defendant–Appellee.

No. 01–4212.

United States Court of Appeals,
Sixth Circuit.

April 30, 2003.

Before MOORE and GIBBONS, Circuit Judges, and COHN, District Judge.*

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

## OPINION

GIBBONS, Circuit Judge.

Plaintiff-appellant Glenn Hardy brought this action against his former employer Midland Enterprises, Inc. (Midland). Hardy alleges that several years after his retirement Midland increased the price of its post-retirement health care benefits plan in contravention of alleged representations Midland made to Hardy before his retirement. Hardy asserts several state law claims and a claim under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* The district court dismissed all but one of Hardy's state law claims on the basis of ERISA preemption. The district court also dismissed Hardy's ERISA claim and, after discovery, granted summary judgment in favor of Midland on Hardy's remaining state law claim. Hardy appeals each of the rulings against him. For the following reasons, we affirm each of the district court's decisions.

From 1979 until he retired in October 1995, Hardy worked as a claims manager for the Ohio River Company, a subsidiary of Midland. Before he decided to take early retirement in 1995. Hardy asked Midland about its retirement benefits. In a letter dated July 14, 1995, Midland's Benefits Administrator responded to Hardy's questions. Included on page three of the letter was the following paragraph regarding post-retirement health insurance benefits:

> Until age 65, you and your spouse will be covered by the health and dental care plan that is provided to our retirees. You will need to pay the required contribution to continue your membership in the plan. The monthly contribution is $41.67 per month for two person coverage or $20.83 per month for one person. You may choose to have this deducted from your pension check or pay the contribution directly to the company.

On behalf of himself and his wife, Hardy elected to participate in Midland's post-retirement health care plan.

Almost four years after Hardy's retirement, Midland informed him that it would be increasing his monthly contribution rate for health insurance benefits to account for rapidly increasing health care costs. By letter dated July 6, 1999, Midland informed Hardy that, effective January 1, 2000, his monthly premium would increase from $41.67 to $154.42, with further rate increases to follow in subsequent years.

Hardy filed this action on June 9, 2000, claiming that Midland's July 14, 1995, letter precluded Midland from lawfully raising his monthly health insurance premium until he was sixty-five years of age. In his complaint, Hardy asserted various state contract and tort law claims. Midland moved to dismiss the lawsuit, contending that ERISA preempts each of Hardy's claims. In response, Hardy amended his complaint to add a claim under ERISA for breach of fiduciary duty. Midland then filed a superseding motion to dismiss repeating its argument that ERISA preempts Hardy's state law claims and arguing that Hardy failed to state a cognizable claim under ERISA.

The district court granted in part and denied in part Midland's motion to dismiss. The district court determined that Hardy had failed to state a cognizable claim under ERISA for breach of fiduciary duty and that ERISA preempts all but one of Hardy's state law claims. The district court did not dismiss Hardy's state law claim for rescission of his agreement electing early retirement based on Midland's alleged misrepresentation in its July 14, 1995, letter. After discovery, Midland moved for summary judgment on Hardy's remaining claim. The district court grant-

ed Midland's motion, finding that Hardy had failed to present any evidence of a misrepresentation by Midland.

Hardy appeals from the district court's partial grant of Midland's motion to dismiss and the district court's grant of Midland's motion for summary judgment. We review both decisions *de novo*. *See, e.g., Amini v. Oberlin College*, 259 F.3d 493, 497–98 (6th Cir.2001) (reviewing *de novo* a district court's grant of a motion to dismiss); *Neshewat v. Salem*, 173 F.3d 357, 361 (6th Cir.1999) (reviewing *de novo* a district court's grant of summary judgment).

▪ We first review the district court's ruling that Hardy failed to state a claim cognizable under ERISA. In Count VI of his complaint, Hardy asserts that Midland breached its fiduciary duties under ERISA by misrepresenting to him the amount he would be required to pay for health insurance after retirement. The district court correctly found that an employer's fiduciary duties under ERISA may be implicated when it assumes the role of explaining its retirement program to employees considering retirement. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 404–05 (6th Cir.1998) (*en banc*) (citing ERISA and finding that "GM may have acted in a fiduciary capacity when it explained its retirement program to the early retirees"). For instance, in *Varity Corp. v. Howe*, 516 U.S. 489, 497–504, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court held that an employer breached its fiduciary duties under ERISA when it misled its employees about the likely future of its plan benefits. Therefore, Hardy's claim that Midland misrepresented the amount he would have to pay for health insurance after retirement would be cognizable under ERISA had he alleged facts sufficient to show such a misrepresentation.

The district court, however, correctly found that the allegations in Hardy's complaint cannot support a claim for misrepresentation cognizable under ERISA. The district court found that, according to the complaint itself, the statements made by Midland in its July 14, 1995, letter were true when made. In its July 14, 1995, letter, Midland stated that the monthly contribution for health insurance benefits "is" $41.67, and, according to the complaint, that is the amount Hardy paid monthly from the date of his retirement until January 1, 2000. The letter, which was attached to the complaint, did not state that Hardy's health care insurance premium would never change or would not change until he was sixty-five. Moreover, the letter was not inconsistent with Midland's official health care plan document, which Hardy received and which explicitly provided that Midland "reserve[d] the right to terminate, amend or modify the Plan for any reason, at any time." *See Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir.1997) (holding that a court ruling on a motion to dismiss may consider a document that is referenced in the complaint and is central to the plaintiff's claims).

The district court properly found Hardy's ERISA claim to be analogous to the claim made by the plaintiffs in *Sprague*. In *Sprague*, GM issued to its employees various booklets, some of which stated, without further reservation, that GM's benefits plan entitled retirees to health insurance at no cost to them for their lifetimes. 133 F.3d at 401. Later, however, GM changed the terms of its plan to require contributions from its retirees. *Id.* at 395. The plaintiffs in *Sprague* claimed that through the statements GM made in its booklets, GM had misled retirees in violation of its fiduciary duties under ERISA. *Id.* at 404.

This court rejected the plaintiffs' claim in *Sprague* as a matter of law because GM in its booklets had not represented that its plan would not change. *Id.* at 405. Although GM had stated in a summary of its then-existing plan that GM would pay the entire cost of health care coverage for its retirees for their lifetimes, "[t]his was undeniably true under the terms of GM's then-existing plan." *Id.* This court held that ERISA did not obligate GM to explicitly reserve its right to change the plan every time it sent a participant a summary of the plan. *Id.* The plaintiffs' ERISA claim in *Sprague* is sufficiently similar to Hardy's ERISA claim here such that we hold, as we did in *Sprague*, that an employer does not breach its duties under ERISA by summarizing the current terms of a benefits plan without explicitly noting its unilateral right to change the plan, including the price of the plan, at any time.

■ Next, we review the district court's determination that ERISA preempts all but one of Hardy's state law claims. ERISA was enacted to ensure that if a worker has been promised a benefit upon retirement, and if the worker has fulfilled whatever conditions are required to obtain the vested benefit, he actually will receive it. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). Furthermore, by enacting ERISA, Congress intended to "completely preempt the area of employee benefit plans and to make regulation of benefit plans solely a federal concern." *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991), Accordingly, ERISA preempts state law claims that "relate to" any employee benefit plan governed by ERISA. 29 U.S.C. § 1144(a). "The phrase 'relate to' is given broad meaning such that a state law cause of action is preempted if 'it has connection with or reference to that plan.'" *Cromwell*, 944

F.2d at 1275 (quoting *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 732–33, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)).

The district court correctly determined that ERISA preempts counts I, II, III, and V of Hardy's complaint, each of which essentially restates Hardy's ERISA claim in terms of a state law cause of action. In Count I, Hardy seeks compensatory damages and specific performance, alleging that Midland, by increasing his health insurance premium, breached an alleged contract arising out of the July 14, 1995, letter. In Count II. Hardy claims that promissory or equitable estoppel obligates Midland to provide him with health insurance at the rate specified in the July 14, 1995, letter. In Count III, Hardy asserts a claim for misrepresentation and seeks compensatory damages. In Count V, Hardy seeks punitive damages to remedy Midland's alleged malicious violation of his contractual rights.

The parties agree that ERISA governs Midland's health insurance plan. Therefore, ERISA preempts any of Hardy's state law claims that "relate to" Midland's health insurance plan. In each of counts I, II, III, and V, Hardy seeks a state law remedy for the losses he incurred because Midland increased his required contribution to Midland's health insurance plan in alleged contravention of the July 14, 1995, letter. As *Sprague* demonstrates, such claims are governed by ERISA. 133 F.3d at 405 (finding that an employer's fiduciary duties under ERISA are implicated by a claim that the employer raised the price of its retirement benefits program in alleged contravention of earlier representations). Because Hardy's claims in counts I, II, III, and V "relate to" Midland's ERISA-governed health insurance plan, ERISA preempts these claims.

Hardy argues that ERISA does not preempt these claims because Midland's

official health insurance plan document does not specify the amount retirees are required to contribute for health insurance. Regardless of whether the amount retirees are required to contribute is explicitly set forth in the plan document, however,. Hardy's claims regarding the amount he should be required to contribute to Midland's health insurance plan are preempted because they plainly "relate to" Midland's ERISA-governed health insurance plan in that they "affect[ ] relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries." *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 556 (6th Cir.1987) (quoting *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises*, 793 F.2d 1456, 1467 (5th Cir.1986)).

■ We now turn to the district court's grant of summary judgment in favor of Midland on Hardy's state law rescission claim. In Count IV, Hardy seeks rescission of his agreement with Midland to accept early retirement and he seeks restitution of wages he lost as a result of retiring early in reliance upon Midland's alleged misrepresentations regarding the future costs of his health insurance benefits.[1] The district court correctly found

that under Ohio law, which applies in this case, a plaintiff seeking to rescind a contract must show by clear and convincing evidence that among other things, there was a false representation of fact. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, 119 (1954). The district court also correctly found that the July 14, 1995, letter did not contain a false representation of fact. The letter simply stated the amount of the monthly contribution for health insurance at the time of the letter. As the district court stated, "That this price changed years later does not render untrue the July 14, 1995 statement." Because the July 14, 1995, letter contained no false representation of fact, the district court correctly held that Hardy's claim for rescission fails.

For all the foregoing reasons, we affirm each of the district court's rulings.

COHN, Senior District Judge, dissenting.

I dissent as to the majority's holding on the grant of summary judgment on Hardy's state law rescission claim. The majority holds that there was no false representation of fact because "the July 14, 1995, letter did not contain a false representation of fact."[1] The majority agrees

---

1. Although it did not cross-appeal, Midland argues that the district court should have held that ERISA preempts this claim along with Hardy's other state law claims. The district court found that Count IV is fundamentally different from Hardy's other state law claims because Count IV seeks to redress a different injury from the injury alleged in Hardy's other state law claims. In Count IV, Hardy seeks a remedy for the lost wages he incurred by retiring early. In Hardy's other state law claims he seeks a remedy for the losses he incurred because Midland increased his health insurance premiums. The district court found Hardy's claim in Count IV analogous to the plaintiffs' claims in *Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir.1989). In *Perry*, ERISA preemption did not apply

because "the plaintiffs sought an equitable remedy (recission) and a clearly defined monetary amount (lost wages) that in no way depended on an ERISA plan for determination." *Lion's Volunteer Blind Industrs., Inc. v. Automated Group Admin., Inc.*, 195 F.3d 803, 809 (6th Cir.1999) (describing but distinguishing *Perry*). Because we affirm the district court's decision to grant summary judgment in favor of Midland on this claim, it is unnecessary for us to resolve this issue.

1. *See Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, 122 (1954) (holding that a false representation of a material matter of fact is a necessary element of a rescission claim).

with the district court that the "letter simply stated the monthly contribution for health insurance at the time of the letter" and that the letter was true when it was written even though the price later changed.

The letter, written in response to a question by Hardy concerning his continued ability to pay for health insurance after retirement, stated:

> Until age 65, you and your spouse will be covered by the health and dental care plan that is provided to our retirees. You will need to pay the required contribution to continue your membership in the plan. The monthly contribution is $41.67 per month for two person coverage. . . .
>
> Upon reaching age 65, you will be covered by the Midland Enterprises Medicare Supplement Plan.

Hardy says he also discussed his required health insurance premiums with his company's benefits manager and that he was told his premium costs would be approximately $500.00 per year, which is consistent with a $41.67 monthly premium payment.

The district court found—and the majority appears to agree—that Hardy's interpretation of the letter to mean that the payments were fixed until he reached age 65 was simply his subjective understanding of the letter and unrelated to the objectively true interpretation of the letter, which was that *as of the time of the letter only,* payments were set at $41.67 per month. The letter, however, states that "[u]ntil age 65, you and your spouse will be covered" by the insurance plan. It then goes on to say that the "monthly contribution is $41.67."

An answer that is technically true but that is misleading and intended to deceive the questioner (and that succeeds in doing so) is a false representation. *See United*

*States v. DeZarn,* 157 F.3d 1042, 1048 (6th Cir.1998) (holding that defendant could be charged with perjury where his testimony was technically true but was intended to deceive); *see also United States v. Lane,* 735 F.2d 799 (5th Cir.1984) (same); *United States v. Slawik,* 548 F.2d 75, 86 (3d Cir. 1977) (same). In *DeZarn,* this court held that when a witness answered questions truthfully as to an event held on the date mentioned by the prosecutor but he knew the prosecutor was asking about an event the previous year the witness could be charged with perjury and "the Government [was] entitled to present, and the jury to consider, evidence of the context of the questioning which would establish that the Defendant—despite the false premise of the question—knew exactly what the questions meant and exactly what they were referring to." *DeZarn,* 157 F.3d at 1049.

Here Hardy argues similarly that Midland knew about his concerns about the cost of health care insurance (because he specifically asked about it) and that its responses to him, when viewed in this context, were deceptive, possibly intentionally so. Even though the letter may have been technically true—a finding that I do not necessarily endorse—it may still constitute a false representation given the context. That is a question that should be resolved by the trier of fact after hearing the evidence.