NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0226n.06

No. 20-3079

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 27, 2021
DEBORAH S. HUNT, Clerk

FAITH TOWNSEND,

     Plaintiff-Appellant,

v.

ROCKWELL AUTOMATION, INC.,

     Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

O R D E R

Before: GUY, CLAY, and DONALD, Circuit Judges.

Faith Townsend, proceeding *pro se*, appeals a district court's judgment dismissing her employment-discrimination suit filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 to 2000e-17. This case has been referred to a panel of the Court that, upon examination, unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a).

Townsend, an African American, worked for many years for defendant Rockwell Automation, Inc. ("Rockwell") in its Technical Support Center on the "After Hours Team," a group that consisted of five engineers and a supervisor. Team members handled weekend customer service calls and worked remotely except for one shift per week in the office. Robert Rodriguez was the team's supervisor from 2014 through 2018. In June 2017, Townsend's son died, leading her to take an extended leave of absence. On October 6, 2017, while still on leave, she filed a charge of race discrimination against Rockwell with the Ohio Civil Rights Commission ("OCRC"). After an investigation, the Equal Employment Opportunity Commission ("EEOC") concluded Townsend's allegations, if proven, would not violate any antidiscrimination statutes. The EEOC nonetheless issued her a right-to-sue letter on October 17, 2017, which required

Townsend to file suit within ninety days. *See* 42 U.S.C. § 2000e-5(f)(1). Despite the notice provided in her right-to-sue letter, Townsend did not file suit until November 28, 2018, more than 9 months past the statute of limitations.

Townsend returned to work at Rockwell on the same day that she received her right-to-sue letter. In February 2018, Rodriguez sent the team an email regarding proper use of the "cell phone escalation process," a protocol requiring use of a designated cell phone to obtain assistance with difficult customer service calls and tracking of the calls by sending emails to supervisors. Townsend responded with an email blast to hundreds of Rockwell employees, alleging race discrimination at Rockwell, prior unfair application of the call-tracking policy, and assignment of a disproportionately high volume of calls to her. Rockwell suspended Townsend with pay until an internal investigation concluded that her email had violated company policy and that there was no merit to her allegations of race discrimination, save for one improper remark made years before by a coworker. Townsend received a written warning from Rodriguez on April 11, 2018.

After the conclusion of the investigation, Rodriguez attempted to arrange Townsend's return to work. But the stress of the situation had caused Townsend to be hospitalized for a few days, prompting her to take a few weeks of paid leave, followed by additional unpaid leave. Townsend never returned to work and submitted notice of her resignation on or about August 7, 2018. Her application for state unemployment benefits was denied.

On September 13, 2018, Townsend filed a second OCRC charge of race discrimination against Rockwell. The EEOC issued a right-to-sue letter on September 25, 2018.

On November 28, 2018, Townsend filed her employment-discrimination suit, naming Rockwell and Rodriguez as defendants and raising claims of discrimination under Title VII and 42 U.S.C. § 1983 beginning in 2007. For the time period prior to her 2017 EEOC charge, Townsend alleged verbal harassment, Rockwell's failure to adequately investigate discrimination, unfounded criticism of her work, denial of payment for overtime, lack of equal training opportunities, demotion from a team leader position, a change in the call-tracking policy to favor the rest of her team, and Rodriguez's uninvited attendance at her son's funeral. For the time period

after the 2017 EEOC charge, Townsend alleged that she had been: (1) unable to order new equipment since reporting discrimination to Rockwell; (2) assigned to twenty call management queues while other team members were assigned to one; (3) suspended due to her email blast; (4) sent text messages with racial slurs during her post-suspension leave; (5) forced to resign due to an unsafe work environment; and (6) denied unemployment compensation because Rockwell falsely reported that she had worked for two days immediately prior to her resignation. The defendants moved to dismiss the complaint, arguing, among other things, that the complaint failed to state a claim.

The district court initially granted the motion in part, dismissing the § 1983 claims and dismissing Rodriguez as a defendant. Townsend amended her complaint to withdraw her § 1983 claims. Upon further consideration, the district court dismissed as untimely Townsend's Title VII claims arising from alleged discrimination occurring prior to her 2017 EEOC charge and dismissed for lack of exhaustion her claims asserting later discrimination.

Protesting that she had exhausted her claims, Townsend filed a copy of her 2018 right-to-sue letter. After the district court reopened the case, Townsend moved the court to reconsider its dismissal of her older claims as untimely. She contended that she had been unable to file a timely lawsuit because she had suffered continuing mental trauma from the uninvited appearance of Rodriguez and others at her son's funeral. The district court denied Townsend's motion, concluding that equitable tolling was not appropriate because she had waited about a year to file suit and because emotional distress from discrimination was not unusual.

Rockwell moved for summary judgment. Upon consideration of the motion and the responsive pleadings, the district court granted summary judgment in Rockwell's favor, concluding that Townsend's claims were time-barred, were without merit, or were not properly raised.

On appeal, Townsend reasserts her claims that Rockwell discriminated against her, subjected her to a hostile work environment, retaliated against her, and constructively discharged her. She argues that the untimeliness of her claims should be excused under the doctrines of

equitable tolling and equitable estoppel.  She further asserts that the district court committed errors at the case management and pretrial conferences.

 In response to Rockwell's summary judgment motion, Townsend raised further claims regarding disparate merit increases and the cancellation of her health insurance. We decline to consider issues not raised in her original or amended complaint because they have not been properly pleaded.  *See J.H. v. Williamson County*, 951 F.3d 709, 722 (6th Cir. 2020).

We also note that Townsend has attached an unauthorized appendix to her brief on appeal. See 6 Cir. R. 30(a)(1).  We will not consider any evidence in the appendix that is not part of the district court record.  *See Adams v. Holland*, 330 F.3d 398, 406 (6th Cir. 2003).

Likewise, Townsend did not raise her  argument for equitable estoppel below. We grant equitable estoppel only if Plaintiff can demonstrate: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Michigan Exp., Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004). Townsend now argues that Rockwell misled her with a promise of a fair investigation into her complaints and caused her not to pursue her right to sue by allowing the time to expire during the internal investigation. But Rockwell never encouraged Townsend to abandon her suit. And a promise to conduct a fair investigation is not a misrepresentation that would cause us to grant this rarely invoked procedure "reserved for truly exceptional circumstances*." Newberry v. Serv. Experts Heating & Air Conditioning, LLC*, 806 F. App'x 348, 360 (6th Cir. 2020). Accordingly, even on the merits, we find invoking equitable estoppel for Townsend's time-barred claims to be unwarranted.

Townsend next contends that the district court committed errors at the case management and pretrial conferences.  She asserts that the court erred by setting the pleading amendment cutoff date as the day of the case management conference; not permitting discussion of the deadline; holding the pretrial conference despite her receipt of discovery only eighteen hours earlier; and not discussing discovery with her.  However, Townsend does not cite any authority supporting her

assertion that the court erred, and she does not explain how the court's actions prejudiced her. We find these arguments to be without merit.

We review a grant of summary judgment de novo. *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon consideration of a motion for summary judgment, the district court's function is not to weigh the evidence and determine the truth of the matters asserted, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The movant bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The district court must view the evidence in the light most favorable to the non-moving party, who must present sufficient evidence such that a rational jury might find in its favor. *Anderson*, 477 U.S. at 255, 256-57; *see also Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

To pursue a Title VII action, a plaintiff must file a timely charge of employment discrimination with the EEOC or the appropriate state agency, obtain a right-to-sue letter from the EEOC, and file a timely complaint in federal court. *See* 42 U.S.C. § 2000e–5(e)(1), (f)(1); *Peeples*, 891 F.2d at 633. Where, as here, the alleged discrimination occurred in a "deferral state," i.e., a state such as Ohio which has enacted its own employment discrimination laws, the plaintiff must file a charge within 300 days of the alleged unlawful act. *See* 42 U.S.C. § 2000e–5(e)(1); *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). After receiving the right-to-sue letter, the plaintiff has ninety days to file a federal complaint. *See* 42 U.S.C. § 2000e–5(f)(1).

Townsend filed her complaint within ninety days of receipt of her second right-to-sue letter. However, the complaint is timely only with respect to alleged discrimination occurring on or after November 17, 2017, i.e., within the 300-day period before Townsend filed her second EEOC charge on September 13, 2018.

Both time limits are subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392-98 (1982) (300-day limit); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (ninety-day limit). Townsend argues her inability to meet the filing deadline should be excused for equitable tolling. Where the facts regarding equitable tolling "are undisputed or the district court rules as a matter of law that equitable tolling is unavailable, we apply the de novo standard of review to a district court's refusal to apply the doctrine of equitable tolling; in all other cases, we apply the abuse of discretion standard." *Amini*, 259 F.3d at 500 (quoting *Dunlap v. United States*, 250 F.3d 1001, 1007 n.2 (6th Cir. 2001)). Similar to our review of petitions for equitable estoppel, "this circuit has repeatedly cautioned that equitable tolling relief should be granted only sparingly." *Id.* In consideration of this claim, we consider several factors including (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Jackson v. United States*, 751 F.3d 712, 719 (6th Cir. 2014). Townsend claims she was unable to bring her claims in a timely fashion because the discrimination she faced in her workplace impacted her mental health. This assertion, alone, is insufficient to warrant tolling and we thus decline to equitably toll the limitations period for her claims.

Townsend's timely allegations of race discrimination are that she was assigned more calls than other team members, that she alone did not receive new equipment, and that she was suspended. In support of her claim, she provided a screen shot from her phone, allegedly showing that on October 2, 2017, she was assigned to twenty call queues while other team members were assigned to one queue. Her email blast also contained screenshots for queues on December 2, 2017.

Under Title VII, it is unlawful "for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

national origin.'" 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination by direct or circumstantial evidence. *See Peeples*, 891 F.3d at 633.

The Supreme Court established a three-part framework for the allocation of proof in employment discrimination cases where there is an absence of direct evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-03 (1973). The complainant in a Title VII action carries the initial burden of establishing a prima facie case of discrimination. *Id.* at 802. To establish a prima facie case, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) her employer replaced her with someone outside of the protected class or treated her differently from similarly situated non-protected employees. *See id.*; *Peeples*, 891 F.3d at 634. Adverse actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Kuhn v. Washtenaw County*, 709 F.3d 612, 625 (6th Cir. 2013) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007)).

Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action taken against the employee. *McDonnell Douglas Corp.*, 411 U.S. at 802. Thereafter, the burden shifts to the plaintiff to establish that the employer's stated reason was a pretext for discrimination. *Id.* at 804. Although the burden of production shifts, the burden of persuasion remains at all times with the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014).

We conclude that Townsend failed to demonstrate that she was subjected to an adverse action. As to the higher call volume, the October screenshot occurred before the date encompassed by the second EEOC charge. And, even when considered with the later screenshots, Townsend has only presented snapshots of particular days from her work schedule. The snapshots cannot, without complete data of Rockwell's call logs, demonstrate a pattern of subjecting Townsend to a

higher call volume compared to her peers. With respect to the alleged denial of new equipment, Townsend did not identify any equipment that she had not received and merely made a conclusory allegation that other team members had new equipment in their work areas. Last, before she resigned, Rockwell placed Townsend on paid leave because she sent an email that violated her workplace's email acceptable use policy. We have held that a paid suspension does not constitute an adverse action. *See Sensabaugh v. Halliburton*, 937 F.3d 621, 629 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 1116 (2020). Therefore, the district court's grant of summary judgment on this claim was proper.

Townsend's timely allegations of a hostile work environment include the increased call volume, lack of new equipment, and text messages sent by her coworkers during her post-suspension leave. Townsend did not consider it appropriate for coworkers to text her while she was on leave, and she construed one text message as suggesting that she had been discharged by Rockwell. She newly alleges that a human resources representative at an April 2018 meeting appeared to have a gun.

To establish a Title VII hostile-work-environment claim, a plaintiff must provide evidence of harassment that "unreasonably interfer[ed] with her work performance and creat[ed] an objectively intimidating, hostile, or offensive work environment." *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008); *see also Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010). In determining whether the workplace is subjectively and objectively hostile, a court should consider the totality of the circumstances, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23 (1993). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

Townsend has failed to establish a hostile-work-environment claim. To begin, her allegation regarding the gun is raised for the first time on appeal and will not be considered. *See*

*Durden*, 448 F.3d at 922. In regards to her text communications with coworkers, Townsend received two text messages between coworkers as part of a group chat. But they were text messages that no reasonable person would find physically threatening, humiliating, or even offensive. *See Harris*, 510 U.S. at 22-23. Further, as discussed above, the allegations of an increased call volume and lack of new equipment are not supported by the evidence. Nor do these same allegations, analyzed in a hostile workplace context, represent harassment that would create "an objectively intimidating, hostile, or offensive work environment." *Grace*, 521 F.3d at 678.

Townsend also asserts that Rockwell retaliated against her after she reported discrimination within the company and filed EEOC charges. Her timely allegations of retaliation include the increased call volume, lack of new equipment, her suspension, the aforementioned text messages, and Rockwell's interference with her application for unemployment benefits by issuing her a paycheck which purportedly suggested that she had returned to work and then resigned.

To establish a prima facie case of retaliation under Title VII, the plaintiff must show that: (1) she engaged in activity protected by Title VII; (2) the defendant knew of the protected activity; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) a causal connection existed between the protected activity and the adverse employment action. *Montell*, 757 F.3d at 504. Protected activities include filing an EEOC charge and opposing discriminatory practices by making complaints to management. *See* 42 U.S.C. § 2000e-3(a); *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015).

Townsend engaged in protected activities by filing an EEOC charge and reporting alleged discrimination to Rockwell. But again, she has not shown that Rockwell took an adverse employment action against her: 1) her allegations of increased call volume and lack of new equipment were unsupported in the evidence, 2) none of the text messages she received from her coworkers could be construed as offensive, and 3) being placed on paid leave is not an adverse employment action. Additionally, her allegation that Rockwell interfered with her unemployment benefits is not supported by the record. Townsend was denied benefits because she resigned from

her position after going on unpaid leave, rather than because Rockland simply provided her a paycheck for her last date of employment.

Finally, Townsend contends that Rockwell constructively discharged her, and she reasserts her above allegations of discrimination. Constructive discharge occurs where the discrimination suffered by an employee was so intolerable that a reasonable person would feel compelled to resign and the employee actually did so. *Green v. Brennan*, 136 S. Ct. 1769, 1776-77 (2016). When determining whether a constructive discharge occurred, courts consider the same types of circumstances as for a hostile-work-environment claim. *See Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635 (6th Cir. 2003) (citing *Harris*, 510 U.S. at 23). Additionally, we consider whether an employee is subjected to: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001).

Although Townsend in fact resigned, for the reasons previously stated, she has not demonstrated that she suffered discrimination that would support her claim. None of the actions she alleges, including a higher call volume, the text messages she received from coworkers, or a lack of new equipment, can be considered "so intolerable that a reasonable person would feel compelled to resign." *Green*, 136 S. Ct. at 1776-77.

Accordingly, we **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk

- 10 -