RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0149P (6th Cir.)
File Name: 01a0149p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
     *Plaintiff-Appellant,*

     *v.*

UNITED PARCEL SERVICE,
INC.,
     *Defendant-Appellee.*

No. 99-4367

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 97-01142—Sandra S. Beckwith, District Judge.

Argued: September 15, 2000

Decided and Filed: May 7, 2001

Before: NORRIS and DAUGHTREY, Circuit Judges;
BERTELSMAN, District Judge.

_____

*The Honorable William O. Bertelsman, United States District Judge
for the Eastern District of Kentucky, sitting by designation.

1

_____

## COUNSEL

**ARGUED:**    Lisa J. Banks, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant.    James Alan Lips, TAFT, STETTINIUS & HOLLISTER, Cincinnati, Ohio, for Appellee.  **ON BRIEF:** Lisa J. Banks, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant.  Rebecca L. Simpson, TAFT, STETTINIUS & HOLLISTER, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

**PER CURIAM**.  In this appeal, the Equal Employment Opportunity Commission seeks reversal of the district court's decision granting summary judgment to the defendant, United Parcel Service, in an action brought by the EEOC under the Americans with Disabilities Act, 42 U.S.C. § 12117(a), on behalf of former UPS employee William Woods. Because we find disputed questions of material fact concerning the company's failure reasonably to accommodate Woods's disability by permitting him to transfer to another UPS facility, we conclude that summary judgment was inappropriate and reverse.

### PROCEDURAL AND FACTUAL BACKGROUND

Summarized, the complaint in this suit indicated that Woods was originally a UPS driver at the company's facility in Austin, Texas, when he developed a serious reaction to a local allergen and was advised by his physician to leave central Texas. Woods requested a transfer from the company, but UPS refused the transfer, citing company policy and, according to Woods, suggested  instead that he resign his position in Texas and re-apply for a job with UPS in Ohio, thereby achieving the same result.  Allegedly acting on this

This claim is simply disingenuous.  If the EEOC's version of the facts is to be believed, then UPS advised Woods to resign his Texas position and re-apply in Cincinnati as an alternative to transfer, and as an accommodation for a disability of which they were well aware.  Assuming these facts are true, the EEOC can arguably make out a prima facie case of failure to accommodate, when the company's treatment of Woods is viewed as an integrated whole and not bifurcated into separate claims, as the district court mistakenly believed it should be.  We conclude that the facts in this regard are genuinely disputed and clearly material to the case at hand.  It follows that the district court's grant of summary judgment must be reversed on this ground and the case remanded for further proceedings.

REVERSED and REMANDED.

statutory duty to consider transfer as a reasonable accommodation for Woods, and taking Woods's allegations about UPS's promises of rehire as true, we conclude that a reasonable jury could find that Woods's resignation was not truly voluntary and not actually intended to end his employment with UPS. In that limited context, UPS's subsequent failure to rehire Woods can legitimately be seen as an adverse employment action, because it resulted in the involuntary loss of his job due to UPS's failure to reasonably accommodate his disability.

### 4. Disputed Issues of Material Fact

From our discussion of the district court's rulings on the EEOC's prima facie case, it is clear that there remain in this case questions of disputed fact that are material to the outcome of the case and will therefore have to be submitted to the trier of fact for resolution. Regarding motions for summary judgment, the Supreme Court has noted that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8 (1986) (emphasis in original). The Court continued by emphasizing the dual requirements of genuineness -- that is, that a dispute must concern evidence upon which the jury could return a verdict for the non-moving party -- and materiality: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*.

In this case, UPS asserts that the facts are uncontested, although it acknowledges that "[t]he Commission has claimed the existence of a few genuine issues of material fact, surrounding its argument that an 'interactive process' occurred in response to a request for ADA accommodation...and its argument that Woods was misled by UPS's promises of employment into resigning his job." UPS claims, without explanation, that these disputed facts are not material as a matter of law.

advice, Woods quit his job, moved his family to northern Kentucky, and applied for a job with UPS in Cincinnati. Upon receipt of his application, however, UPS informed Woods that he would not be rehired due to a company policy of not hiring former employees.

Woods filed a complaint with the Equal Employment Opportunity Commission, which filed this lawsuit on his behalf, alleging that UPS failed to provide a reasonable accommodation of Woods's disability by refusing to allow his relocation to a different geographical region. UPS moved for summary judgment, arguing first that Woods could not make out a prima facie case of discrimination because he was not disabled, that his EEOC charge was not timely filed with respect to the failure to transfer claim, and that Woods lost coverage under the ADA when he voluntarily resigned his job in Texas. UPS also argued that even if Woods was actually disabled and covered by the ADA, UPS had no obligation to accommodate him because he was able to perform the essential functions of his job without accommodation, because UPS did not know or have reason to know of his disability, and because relocating Woods to Cincinnati was unreasonably burdensome.

The district court granted UPS's motion. The court began by dividing the EEOC's complaint into two distinct violations, i.e., the failure to transfer and the failure to rehire. The court characterized the first violation (the failure to transfer) as a reasonable accommodation claim, and the second (the failure to rehire) as a discrimination claim. Because Woods did not file his EEOC complaint until April 1995 -- approximately one year after UPS informed him that he would not be transferred due to company policy -- the court ruled that his charge was untimely under the ADA, which incorporates Title VII's 300-day filing requirement. Therefore, the court granted summary judgment to UPS on the transfer issue.

Regarding the purported "second" claim of discriminatory failure to rehire, the court found that Woods could not

establish that he was disabled or that UPS regarded him as disabled after he was in the Cincinnati area, because his allergies had cleared up at that point. The court further held that UPS employees in Cincinnati did not know of Woods's disability in Texas, and so the EEOC could not establish that their failure to rehire Woods was based on any discriminatory motive. Finally, the court noted in a footnote that even if the EEOC intended the failure to rehire claim to be construed as a denial of a reasonable accommodation, the claim would fail because once Woods had voluntarily resigned his position in Texas, he was no longer entitled to the protection of the ADA.

On appeal, the EEOC contends that the district court wholly mischaracterized its case by separating the complaint into two distinct claims. The Commission argues that the failure to transfer and the failure to rehire were all part of a single extended negotiation that resulted in UPS's failure reasonably to accommodate Woods's disability with relocation, and that insofar as the terms of that negotiation are contested, the matter should be presented to a fact-finder for trial. UPS, of course, denies that there are any disputed issues of material fact and supports the district court's construction of two distinct claims, arguing that both are barred as a matter of law. We disagree on both counts.

The record at the time of the summary judgment motion showed that Woods had been a driver in the company's Austin district since January 1984. Without question, he was a "qualified individual" for ADA purposes: his record at UPS was unblemished and he later received positive letters of reccommendation from his supervisor in Texas. In 1988, Woods began developing serious allergic reactions that grew progressively worse over time. By 1994, these reactions were quite severe and constant, including fever, swollen eyes, nasal congestion, fever blisters, rashes, lung congestion, fatigue, and depression, making it difficult for him to breathe, eat, and sleep. According to his doctors, Woods was allergic to the pollen of a plant, Mountain Cedar, which is specific to central Texas and unique in causing allergic rhinitis. Because the pollen is found only in a particular area of the country,

while in Texas, the place where he sought the accommodation of a relocation.

There being no dispute about the employee's status as a "qualified individual," given his record with UPS in Texas, the EEOC's final hurdle in demonstrating a prima facie case is to establish that Woods suffered an adverse employment action due to his disability. This is perhaps the area of greatest dispute between the parties. UPS focuses on Woods's voluntary resignation in arguing that no adverse action occurred, while the EEOC emphasizes the company's alleged role in inducing that resignation to argue that UPS failed to accommodate Woods. The district court, agreeing with UPS, found that Woods could not have suffered an adverse employment action and was not under the protection of the ADA once he voluntarily resigned his position in Texas, citing this court's unpublished per curiam decision in *Lambert v. Aetna Life Ins. Co.*, 1999 WL 232697 (6th Cir. 1999). While that decision is not binding, we note that it is distinguishable on its facts from the case now before us.

In *Lambert*, the panel held that the plaintiff, who had voluntarily resigned her position after being refused a transfer, was not entitled to the protections of the ADA. However, in that case there was substantial evidence that Lambert was not otherwise qualified for the job for which she re-applied. More to the point, we noted in a published opinion that "an employee's voluntary resignation is not truly voluntary when his employer has encouraged him to resign in order to prevent him from claiming an employee benefit." *Hammon*, 165 F.3d at 447. Similarly, an employee's resignation is not truly voluntary when, as here, it has been encouraged by his employer as a purportedly necessary step in accommodating his disability. We have recently joined the Seventh Circuit in holding that "an employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his old job even with accommodation to a new position within the Company for which that employee is otherwise qualified." *Burns v. Coca-Cola Enterprises*, 222 F.3d 247, 257 (6th Cir. 2000). Therefore, considering UPS's

### 3.  The EEOC's Prima Facie Case

To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show (1) that s/he is disabled; (2) that s/he is otherwise qualified for the position with or without reasonable accommodation; and (3) that s/he suffered an adverse employment action because of his or her disability. *See*, *e.g.*, *Gilday v. Mecosta County*, 124 F.3d 760, 762 (6th Cir. 1997).  A person is "disabled" under the Act if his or her physical or mental impairment substantially limits one or more life activities, including breathing and self-care.    29 C.F.R. § 1630.2(g)-(j). "Reasonable accommodation" can include "[m]odifications or adjustments to the work environment...that enable a qualified individual with a disability to perform the essential functions of that position."  29 C.F.R. § 1630.2(o).

The EEOC insists that Woods was disabled while in Texas because his allergies were so severe as to impair his ability to breathe and to care for himself.  There is testimony in the record which indicates that Woods's reactions to the allergen were steadily worsening, and that by the time he requested the transfer he rarely left home and spent nearly all of his non-working hours in bed.  His wife assumed responsibility for his correspondence and household duties, while he suffered with severe nasal and bronchial congestion, swollen eyes and nose, rashes and fever blisters over large areas of his body, fatigue, fever, and depression.  UPS counters that Woods cannot be viewed as disabled because he was able to work his regular hours without accommodation while in Texas, and because he was admittedly no longer disabled once he moved to northern Kentucky.   However, on the basis of the evidence noted above, Woods's letter to Smith noting his severe allergies specific to Central Texas and requesting a transfer, and his physician's letter stating that effective allergy medication would threaten Woods's safe operation of his truck, we conclude that a reasonable jury could find that Woods was properly "disabled" under the statute due to the substantial limitations his allergy placed on his ability to perform his job

Woods's doctors advised him that relocation might be the only solution when other treatments failed.

In March 1994, Woods wrote a letter to William Smith, the central Texas district manager for UPS, informing Smith that he suffered from severe allergies specific to central Texas and that he wanted to transfer out of the region in order to alleviate his symptoms.  Specifically, Woods sought a transfer to the Kentucky area where he had lived previously and had not suffered from allergies.  His request was accompanied by letters from Woods's doctors urging UPS to consider seriously the request for a transfer.  One physician pointed out that the numerous medications prescribed for Woods's condition "ha[d] been ineffective" but that alternatives were unavailable because they would cause sedation, an unsafe condition for a professional driver.  In April 1994, Rick Montecinos, the human resources manager for UPS, informed Woods that although a transfer was not possible under company policy, Woods could nevertheless resign his position in Texas and be rehired in Ohio or Kentucky.

Montecinos arranged for Woods and his wife to meet with Alexa Johnson, the UPS human resources manager in Cincinnati, in order to discuss the possibility of obtaining a position there.  Johnson similarly advised Woods that he could not be transferred to Ohio, but that, as an alternative, he could quit his job in Texas and apply as a new hire in Ohio, sacrificing any accumulated seniority under the collective bargaining agreement.    Johnson refused to accept an application from Woods while he was still employed by UPS in Texas, but told him if he applied to her before the busy Christmas season, there would be the possibility of at least a seasonal job for him.

On the basis of these conversations, Woods resigned his position with UPS in Texas and moved his family to Kentucky in October 1994.  He submitted an application to UPS in Cincinnati, along with favorable letters of recommendation from Montecinos and Joel Davis, Woods's center manager in Texas.  In November or December 1994,

however, Woods was told that he would not be hired, due to the policy of UPS not to rehire former employees.

UPS, for its part, denies that any of its employees ever promised Woods that he could have a job in Cincinnati and argues that UPS would have been happy to have Woods stay on as an employee in Texas if he so desired. UPS also suggests that the real reason Woods wanted to transfer to central Kentucky was that his family resided there, and that his allegations about disabling allergies were a useful mechanism for getting Woods closer to his family despite the no-transfer policy. UPS alleges that Woods by his own admission was never so disabled by his allergies that he could not do his job, and emphasizes that Woods decided to resign his position voluntarily after his request for a transfer was denied.

## DISCUSSION

### 1. *Standard of Review*

We review a grant of summary judgment de novo. *See, e.g., Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999). In doing so, we must view the evidence and all inferences to be drawn therefrom in a light most favorable to the non-movant. *See, e.g., Keever v. City of Middletown*, 145 F.3d 809, 811 (6th Cir.), *cert. denied*, 525 U.S. 963 (1998). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### 2. *Timeliness*

The United States Supreme Court has held that the limitations period does not begin to run on a claim for employment discrimination until an employer makes and communicates a final decision to the employee. *See Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980). Once the employee is aware or reasonably should be aware of

the employer's decision, the limitations period commences. *Id*; *see also Dixon v. Anderson*, 928 F.2d 212, 218 (6th Cir. 1991).

In this case, assuming that the EEOC's version of the facts is true, Woods went to his supervisors at UPS in March 1994 and explained that due to his deteriorating state of health and on the advice of his physician, he needed to leave central Texas. Woods requested a transfer both orally and in writing. After some weeks of negotiation, UPS denied his request, but offered another option. According to Woods and his wife, several supervisory employees of UPS advised Woods that as an alternative to transfer he could resign his job in Texas and re-apply for a job in Ohio, with assurances that there would be an opening for him in Ohio as long as he arrived before the busy holiday season. Given these facts, we are persuaded that Woods was involved in an on-going interactive process with UPS in order to find some reasonable accommodation for his disability,[1] and that it was not until after Woods was denied rehire in Ohio that he was aware of any adverse employment action of which he could complain. Contrary to the district court's characterization, there were not two separate adverse actions, but rather an ongoing process that ended when Woods found himself without a job in November 1994. Because Woods filed his EEOC complaint within 300 days of learning he would not be employed with UPS, and because he arguably had no reason to suspect that his disability would *not* be accommodated until that time, his charge was timely filed with respect to his claim that UPS failed to reasonably accommodate his disability. The district court erred in characterizing the complaint as two distinct claims, and because the court's ruling on timeliness was based on this bifurcation of the claim, we find that the EEOC complaint as a whole was timely.

---

[1] Engaging in such a process is encouraged by the regulations, which provide: "To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3).