**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0062n.06
Filed: November 2, 2004

**Nos. 03-5453 / 03-6007**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| AMERIGO STEVENSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RAYLOC, JERRY GREEN, and TOM | ) | WESTERN DISTRICT OF TENNESSEE |
| McNALLY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: BATCHELDER and DAUGHTREY, Circuit Judges, and DOWD,[*] District Judge.

**PER CURIAM.** The plaintiff, Amerigo Stevenson, appeals the district court's order granting summary judgment to his employer, Rayloc Corporation, and two Rayloc supervisors based on the court's determination that Stevenson's claim of employment discrimination was untimely and that his claim of retaliation was unfounded. He also challenges the district court's failure to review the order of the district court clerk taxing costs against him. We find no error and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

---

[*]The Hon. David D. Dowd, United States District Judge for the Northern District of Ohio, sitting by designation.

Rayloc manufactures auto parts, including brake shoes. Amerigo Stevenson began working at Rayloc's Memphis facility as a temporary employee in February 1994 and was hired as a full-time worker in the cleaning department in August of that year. He remained in that department until 1999, when he was transferred to the shoe receiving department, where he stayed until being moved to the de-riveting department in June 2000. The dispute that gave rise to this litigation concerns his next move at Rayloc.

Stevenson contended that in September 2000, Tom McNally, a production manager at Rayloc, asked him to take over as "lead man" and run the cleaning department. He said that only later did he find out that he was not being paid what a "lead man" should be paid. In response, Rayloc officials insisted that there was no such position as "lead man" within the cleaning department, although the record suggests that the term may have been common parlance at the Memphis plant for what Rayloc did refer to as an "expeditor." The company also denied that the alleged conversation between Stevenson and McNally ever occurred. Jerry Greene, general manager at the Memphis facility, stated in a declaration supporting the company's motion for summary judgment that the last open "expeditor" position was filled in October 1998, when Steve Vinson was given the job, an assertion confirmed by Vinson. Records from Rayloc's human resources department indicated that Stevenson had never been classified as a "lead man," or as an "expeditor," and that his then-current position with the company was that of "debonder" in the cleaning department, to which he was transferred in September 2000 and where he was still employed at the time he initiated this litigation. Stevenson, however, contended that he had been moved

to what he described as an entry-level position when the de-bonding process was changed in September 2001. Neither his wages nor his benefits were altered as a result of any of the changes in his duties.

For the purposes of his employment discrimination claim, Stevenson alleged that he was denied the "lead man" position that was given to Steve Vinson in 1998, but conceded that this decision was not based on race. Instead, he claimed that he was promised the job in September 2000 but was denied the promotion at that time because he is African American. He alleged that he became aware of this discrimination only in February 2001, when he found out that Vinson was actually being paid more than he was. As a result, Stevenson filed his first EEOC charge in July 2001. He then filed a second complaint in October 2001, charging that he had been demoted in retaliation for filing the initial charge when Rayloc made changes in its operations in September 2001. According to Stevenson, these changes were made "without any courtesy or respect to the workers . . . [t]hey excluded us out of it."

Stevenson filed this complaint on October 5, 2001, alleging violations of 42 U.S.C. § 1981, § 1985, and §§ 2000e – 2000e-5, and the Tennessee Human Rights Act, and seeking back and front pay, declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees and costs. The defendants filed motions to strike a portion of the declaration of Tony Pearson, a former Rayloc employee, on the basis that it was inadmissible hearsay, and for summary judgment. The motion to strike was referred by the

district court to the magistrate judge, who granted the motion when Stevenson did not file a timely response. The district court subsequently granted summary judgment for the defendants and dismissed the action.

Because the parties were not able to agree on the matter of costs, pursuant to Rule 54.1 of the Local Rules for the Western District of Tennessee, the clerk of the court was required to assess costs. The clerk assessed $2,079.42 against the plaintiff in favor of the defendants. The plaintiff then moved for a review of the motion, arguing that the costs had been taxed prematurely, because an appeal was still pending, and that the amount was calculated incorrectly. The district court denied this motion.

The plaintiff now appeals both orders.

### DISCUSSION

The district court granted summary judgment for the defendants based on a determination that Stevenson's suit was barred by the statute of limitations. As the district court explained in its opinion, under the Title VII, a party must file a charge with the EEOC within 300 days of the alleged discriminatory practice. 42 U.S.C. § 2000e-5(e). Under the Tennessee Human Rights Act and under 42 U.S.C. §§ 1981and 1985, the statutory period for filing is one year. TENN. CODE ANN. §§ 28-3-104(a)(3) and 4-21-311(d); *see also Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-61 (1987) (directing federal courts to apply the most appropriate or analogous state statute of limitations in §§ 1981-1985

actions).  The district court held that the time period in both instances began to run in October 1998, when Vinson was given the "expeditor" position.  Using this starting point, Stevenson's claims are clearly time-barred.  However, the plaintiff continues to argue that the period should not have begun to run until February 2001, when he discovered that Vinson was making more money than he was.  To support his contention, Stevenson cites our decision in *EEOC v. UPS* for the proposition that:

> The United States Supreme Court has held that the limitations period does not begin to run on a claim for employment discrimination until an employer makes and communicates a final decision to the employee. *See Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980). Once the employee is aware or reasonably should be aware of the employer's decision, the limitations period commences.

*EEOC v. UPS*, 249 F.3d 557, 561-62 (6th Cir. 2001)**.**

We find it difficult to understand how someone who believed that he became the "lead man" in September 2000 should not reasonably have been aware that he was not actually in that position or being paid commensurately until February 2001.  Sixth Circuit precedent is clear that in Title VII actions, "the starting date for the 300-day limitations period is when the plaintiff learns of the employment decision itself, not when the plaintiff learns that the employment decision may have been discriminatorily motivated.  Indeed, this focus on the discriminatory act is consistent . . . with Supreme Court precedent and the statutory language of Title VII." *Amini v. Oberlin College*, 259 F.3d 493, 499 (6th Cir. 2001); *see also Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (holding that the

"proper focus" when determining the starting point of the limitations period "'is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.'") .

Thus, February 2001 is clearly not the appropriate starting date. An argument could be made that September 2000 is the relevant date, assuming that Stevenson could prove that McNally did in fact make him "lead man" at that time and expected him to do the work required for that position without giving him the corresponding pay. However, as was pointed out by the district court, even if the statute of limitations was triggered in September 2000, all of Stevenson's discrimination claims would still be barred. The EEOC charge, filed on July 3, 2001, was submitted more than 300 days from the last day in September 2000, and October 5, 2001, the date on which he filed this suit, was over a year from any day in September 2000. Thus, we can only conclude that the district court did not err in finding that Stevenson's discrimination claim was barred by the statute of limitations.

To prove a *prima facie* case of retaliation, a plaintiff must satisfy a four-part test, by showing: (1) that he engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an adverse employment action against the plaintiff, and (4) that there was a causal link between the protected action and the adverse employment action. *See Hollins v. Atlantic Co.*, 188 F.3d 652, 661 (6th Cir. 1999). No one disputes that the plaintiff has established the first two parts of the test; Stevenson filed EEOC claims of which Rayloc was aware. However,

Rayloc contends that Stevenson was not subjected to any adverse employment actions. Stevenson argues that he was reassigned to "an entry-level position," but it is not clear what he means by this, because he failed to provide any proof concerning the nature of this alleged demotion. For its part, Rayloc has shown that although there were some changes in procedures in September 2001 as a result of OSHA recommendations that modified somewhat the duties of all cleaning department employees, Stevenson's pay and benefits remained the same. Like the plaintiff in *Kocsis v. Multi-Care Management*, who was transferred to a new job where "she enjoyed the same (or a greater) rate of pay and benefits, . . . her duties were not materially modified . . . [and she] submitted no evidence that she lost any prestige in her position because of her working conditions or her title change," Stevenson has failed to show that he has suffered an adverse employment action. *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 886-887 (6th Cir. 1996). Thus, we conclude that the district court did not err in granting summary judgment on the retaliation claim.

Finally, although it is clear that the plaintiff disagrees with the taxing of costs against him, it is not clear on what basis he believes that the award should be overturned, given that he cites no controlling authority on this issue in his brief. He contends that the district court should not have allowed the taxing of costs while his appeal was still pending, but as the defendants point out, Federal Rule of Civil Procedure 54, which allows for the awarding of costs to the prevailing party, contains no timetable governing the taxation of costs. Stevenson evidently believes that because his case could have been overturned on appeal, the defendants should not have been considered prevailing parties and should not,

therefore, have been awarded costs. But even if we were to overturn the district court's decision on the merits, the awarding of costs could be remedied on remand. As it is, the question is rendered moot by our decision affirming the district court's judgment in all respects. Specifically, we find no abuse of discretion in the district court's decision not to review the clerk's calculation and insufficient proof that the amount of the award was miscalculated.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.