NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0267n.06

No. 21-5301

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DANIEL STEWART; DOUGLAS RYERKERK,
WILLIAM KEE; DAVEY SANDERSON,

  Plaintiffs - Appellants,

v.

KNOX COUNTY, TENNESSEE; KNOX
COUNTY BOARD OF EDUCATION

  Defendants - Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jul 07, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

OPINION

Before: COLE, BUSH, and NALBANDIAN, Circuit Judges.

JOHN K. BUSH, Circuit Judge. This case is about three missed deadlines. The first is the one-year statute of limitations applicable to Plaintiffs' Tennessee-law claims. They brought those claims on time in state court but dismissed them after suing in federal court. The federal case was filed after the statute of limitations expired. Even still, Plaintiffs argue, because the claims were brought on time in state court, the limitations period stopped and cannot bar this federal action. The second and third missed deadlines at issue are the 300-day period after an adverse employment decision within which an employee must file charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and the discovery deadline set by the district court. Plaintiffs argue that the EEOC deadline does not bar their claim because they only knew about the adverse employment decision on the day they were fired, and, even if they failed to meet the EEOC deadline, they argue that Defendants' failure to abide by the district court's discovery deadline warrants equitable relief.

As we explain below, Plaintiffs are wrong on all three fronts. The federal action needed to be brought within the limitations period, regardless of the timeliness of the state action. And no reasonable juror could find that Plaintiffs filed charges of discrimination with the EEOC within 300 days of Knox County's final decision to terminate them. Finally, equitable relief cannot spare them from the EEOC deadline. So we affirm the district court's rulings and deny the motion to certify a question to the Tennessee Supreme Court.

I.

Daniel Stewart, Douglas Ryerker, and William Kee were captains in the security department of Knox County Schools. Davey Sanderson was a sergeant. All four worked for Gus Paidousis, the chief of the security department. And all four allege that when they filed complaints against Paidousis for workplace misconduct, Knox County and the Knox County Board of Education retaliated against them by firing them or transferring them to a different position in the school system.

Paidousis's misconduct allegedly began in 2013, when he ordered security officers to undergo psychological testing, backing off only after Stewart, Ryerker, and Kee (collectively, the Captains) complained to Knox County's lawyers. He also allegedly made "racially charged offensive remarks," sexually harassed female employees, displayed anger by swearing and threatening violence, warned that he would terminate employees who complained about him, and installed security cameras to target his critics. All those allegations were in the formal complaint against Paidousis that the Captains submitted to Knox County Schools in December 2015.

Sanderson made his own allegations, too. In November 2015, he heard a rumor that security officers and a training supervisor had purchased moonshine from another security officer at the shooting range of the Knox County Sheriff's Office. And, apparently, it was not a one-time

sale: that security officer regularly left work allegedly to bootleg. So Sanderson reported the misconduct to Stewart, and Stewart reported it to Paidousis. That good deed did not go unpunished—Knox County Schools transferred Sanderson to a different school and, when a parent complained about the transfer, reprimanded Sanderson for breaching confidentiality. After that reprimand, Sanderson complained to Knox County Schools that Paidousis and another supervisor had retaliated against him for reporting the moonshine sales.

All in all, Paidousis faced a formal complaint from both the Captains and Sanderson. Knox County Schools told him to respond to both. That is when the Knox County Sheriff—Jimmy "J.J." Jones—got involved in investigating the complaints. Sheriff Jones asked an employee to "look into" the Captains' complaint. And Paidousis himself told Sheriff Jones about the Sanderson complaint. He claimed he was not "requesting any action against anyone involved," but Sheriff Jones still investigated.

Those investigations by the Sheriff's Office began the end of Plaintiffs' careers in the security department of Knox County Schools. As background for how that happened, in Tennessee, a sheriff can issue what are known colloquially as "bond cards." According to Plaintiffs, a bond card is "a credential that designates an individual as a Special Deputy of the Knox County Sheriff's Office[.]" Bond-card bearers can call themselves a bonded Knox County Security Officer and, most importantly, can carry a firearm and make arrests. Sheriff Jones alone could grant and revoke a bond card, and his office had an agreement with Knox County Schools that it would provide security department officers with bond cards. The parties dispute whether Knox County Schools required its security officers to have a bond card, but past practice made it "a reasonable assumption" that an un-bonded officer would be terminated. And bond card revocation, with concomitant termination, is what happened to Plaintiffs here.

Citing unspecified "acts of misconduct," Sheriff Jones revoked the Captains' bond cards in January 2016. One day later, Knox County Schools placed them on leave. The same happened to Sanderson in late 2016. James A.H. Bell, the Captains' attorney, asked Sheriff Jones to reinstate the bond cards, but Sheriff Jones refused. The revocation was official on May 6, 2016.

Termination came soon after. By letter dated May 16, Gary Dupler, Knox County's deputy law director, informed Bell: "Since holding a valid bond card is a requirement to hold the captain position, as it is any officer position in the Security Department, [Knox County Schools] will be separating [the Captains] from their current positions in the School Security Department as of June 1, 2016." The Captains knew of the letter at least by May 18, when Dupler emailed it to Bell, who was, as noted, the Captains' counsel. Bell then wrote a Knox County employee that he and the Captains "are investigating our options after being stunned and disappointed over this troublesome development." The Captains' termination became final on June 14, 2016. Sanderson was also terminated from the security department in early 2017.

The procedural history that followed matters most in this appeal. It began on April 5, 2017, when Plaintiffs filed charges of discrimination against Knox County Schools and the Sheriff's Office with both the EEOC and the Tennessee Human Rights Commission. That filing was 295 days after the Captains' terminations were final, but 322 days after Bell received Dupler's letter. Plaintiffs next sued the Knox County Board of Education, Knox County, and the Sheriff's Office in Knox County Chancery Court on June 9, 2017. The state-court complaint alleged that those defendants retaliated against the Captains in violation of the Tennessee Human Rights Act (THRA) and retaliated against Sanderson in violation of the Education Truth in Reporting and Employee Protection Act of 1980 (ETREPA) and the Tennessee Public Protection Act (TPPA).

After the Department of Justice issued each Plaintiff a right-to-sue letter, Plaintiffs turned to federal court for relief. They sued in the Eastern District of Tennessee on September 12, 2018. Now on their fourth amended complaint, they allege that the Knox County Board of Education and Knox County retaliated against them in violation of the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, the THRA, and the TPPA. Sanderson also alleges retaliation under the ETREPA.

After filing this federal lawsuit, Plaintiffs filed a notice of nonsuit in the state-court action in October 2018, and the state court dismissed it. But Plaintiffs' decision to drop their state-court action proved unwise, for they would soon learn that their federal case was to be dismissed as well. Fatal to the federal litigation were several rulings.

First, the district court dismissed Plaintiffs' state-law claims based on the statute of limitations. Each Tennessee statute under which Plaintiffs brought a claim carries a one-year limitations period. *See* Tenn. Code Ann. § 4-21-311(d) (THRA); *Gibbens v. OptumRx, Inc.*, 778 F. App'x 390, 394 (6th Cir. 2019) (citations omitted) (TPPA); Tenn. Code Ann. § 28-3-104 (ETREPA). Plaintiffs acknowledged that this federal lawsuit was filed outside of that period, but they argued that because the timely state-court action was pending when this action was filed, no statute of limitations was running. The district court disagreed, finding that the Tennessee Supreme Court would demand strict compliance with those statutes of limitation, and dismissed the claims.

Second, the district court found that the Captains' EEOC charges of discrimination were not timely filed and granted summary judgment to Knox County and Knox County Schools. Those charges had to be filed "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117 (applying the procedures of § 2000e-5

to ADA enforcement actions). But the district court held that the Captains' charges were untimely only after finding that the limitations period began to run when Bell received the letter from Dupler on May 18, 2016. Whether the district court could consider that evidence was bitterly disputed—it was disclosed after the discovery deadline, so the Captains moved to sanction Defendants and exclude the Dupler letter and Bell's emailed response.

In its third ruling of significance, the district court found that the late disclosure was not "substantially justified" or "harmless" under Federal Rule of Civil Procedure 37(c)(1). As a sanction, the court opted not to exclude the letter and email. Instead, the court here ordered Defendants to pay the Captains' litigation expenses and fees.

All four Plaintiffs timely appeal the district court's dismissal of their state-law claims, and the Captains appeal the district court's grant of summary judgment to Knox County and Knox County Schools on their federal claims. The Captains do not challenge the district court's evidentiary ruling, and no party challenges the district court's decision regarding the sanctions motion.

## II.

We review the district court's dismissal of Plaintiffs' state-law claims de novo, *Swanigan v. FCA US LLC*, 938 F.3d 779, 783 (6th Cir. 2019), construing the complaint "in the light most favorable to" Plaintiffs and accepting their factual allegations as true, *Torres v. Vitale*, 954 F.3d 866, 871 (6th Cir. 2020). In doing so, we apply the substantive law of the state of Tennessee. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *In re Fair Fin. Co.*, 834 F.3d 651, 671 (6th Cir. 2016)). And we review the district court's grant of summary judgment de novo, construing all evidence and drawing all reasonable inferences in favor of the Captains. *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019). But we review the district court's finding that Knox

County and Knox County Schools did not forfeit their timeliness defense for abuse of discretion, reversing only if "firmly convinced that a mistake has been made." *Rogers v. IRS*, 822 F.3d 854, 856 (6th Cir. 2016) (citations omitted).

A.  Tennessee-Law Claims

Plaintiffs first argue that the applicable one-year statutes of limitation should not bar their state-law claims.  At bottom, Plaintiffs ask us to hold that once a claim is brought in a timely civil action, its statute of limitations cannot bar a subsequent civil action raising a claim that mirrors the earlier claim.  They begin by disputing the district court's decision to strictly construe the applicable statutes of limitation.  But we need not reach that issue.  Strict construction of a statute of limitations is relevant only when another statute or rule would, in effect, expand the applicable limitations period.  *See, e.g.*, *Sutton v. Barnes*, 78 S.W.3d 908, 913–14 (Tenn. Ct. App. 2002).  Plaintiffs have failed to show that any statute or rule could do that here.

Start with the cases Plaintiffs have relied on from the beginning to support the argument that filing a lawsuit permanently stops the running of a statute of limitations: *Williams v. Cravens*, 214 S.W.2d 57 (Tenn. Ct. App. 1948) and *Hankins v. Waddell*, 167 S.W.2d 694 (Tenn. Ct. App. 1942).  *Williams* involved a suit to recover land sold to Tennessee for taxes.  214 S.W.2d at 247–48.  In holding that Williams's second lawsuit could proceed, the Tennessee Court of Appeals wrote that filing the first action "cut off the defense of the statute of limitations," even though it "was improperly brought."  *Id.* at 250–51.  It relied on a Tennessee Supreme Court decision rejecting the notion that "a dismissal for want of jurisdiction . . . precludes plaintiff from relying on the saving statute."  *Burns v. Peoples Tel. & Tel. Co.*, 33 S.W.2d 76, 77 (Tenn. 1930) (citation omitted).  It makes no mention of Plaintiffs' proposed rule.  And *Hankins* is similarly unhelpful.  It stands only for the proposition that a pending replevin action tolled the limitations period of a

conversion action because that action became "absolute and unconditional" when "the right to recourse upon the bond was cut off" by a final judgment. *Hankins*, 167 S.W.2d at 695–96. Plaintiffs' parenthetical description of *Hankins*—"statutes of limitation do not run when a related case is pending," *see* Appellant Br. at 35—is an overly generous summary of its holding.

So the "axiomatic rule" Plaintiffs contend exists is not apparent from either case they cite. At any rate, they now claim they do not "need to rely on [those cases] because of Rule 3 of the Tennessee Rules of Civil Procedure." Reply Br. at 15. Why? Because that rule's directive that "[a]n action is commenced within the meaning of any statute of limitations upon [] filing of a complaint" apparently means the statutes of limitation "never started running again" after they filed their state-court action. Appellants' Br. at 36 (citing Tenn. R. Civ. P. 3).

We think Plaintiffs' reading of Rule 3 is a stretch, rooted in their erroneous assumption that this federal action is a mere continuation of their state-court action. In one way, their assumption is mistaken because the claims brought in federal court are different than those they brought in state court.[1] But even if the claims were identical, Plaintiffs fail to acknowledge the reality that they filed two separate lawsuits in the courts of different sovereigns: an action in state court and this action in federal court. Though rooted in the same facts and brought under the same Tennessee statutes, this new federal action was subject to new limitations periods. *Accord Doyle v. Frost*, 49 S.W.3d 853, 859 (Tenn. 2001) (noting the "fundamental difference between filing a second lawsuit and amending an original, timely-filed complaint"). Tennessee law acknowledges that more than

---

[1] In state court, every plaintiff brought a THRA claim and Sanderson alone alleged a TPPA and ETREPA claim. Yet in their opening complaint here, the Captains brought a THRA and TPPA claim, and Sanderson was not even a plaintiff. Sanderson was a named plaintiff in the first amended complaint, but there all four raised a THRA, TPPA, and ETREPA claim. And in the operative pleading, all four make THRA and TPPA claims, and Sanderson alone makes an ETREPA claim.

one "action" arising out of "a common nucleus of operative facts" can exist concurrently in state and federal court—in fact, it prohibits them. *See* Tenn. Code Ann. § 28-3-104(a)(1)(C). Despite their assertions to the contrary, Plaintiffs filed two actions here, and each was subject to its own statutes of limitation. No statute or rule spares their claims from the applicable statutes of limitation.

Nor are we persuaded by Plaintiffs' miscellaneous policy arguments for allowing their state-law claims to proceed. If they sought a speedy determination on the merits, why file a second lawsuit? With right-to-sue letters in hand, Plaintiffs "could have folded" their federal claims into the "action in state court" under Tennessee's rule governing the amendment of complaints. *See Heyliger v. State Univ. & Comm. Coll. Sys. of Tenn.*, 126 F.3d 849, 855–56 (6th Cir. 1997). Or if Plaintiffs preferred to bring their claims in federal court, why not start there? Right-to-sue letters are not a jurisdictional requirement, *Truitt v. County of Wayne*, 148 F.3d 644, 646 (6th Cir. 1998), and nothing prevented Plaintiffs from suing in federal court and seeking a stay while the EEOC investigated their charges. Or, had they amended their state-court complaint, they still could have ended up in federal court had the defendants opted to remove the case. *See* 28 U.S.C. § 1441(a). These questions go unanswered in Plaintiffs' briefs. Instead, they ask that we craft a rule allowing state-court plaintiffs to avoid statutes of limitation when they decide, midcourse, that they would rather be litigating in federal court. We decline.

One final note. As the above explains, we think Tennessee law provides a straightforward answer to Plaintiffs' challenge. They still ask us to certify the question to the Tennessee Supreme Court. To do so we must find a "determinative" question of Tennessee law on which "there is no controlling precedent" from the Tennessee Supreme Court. Tenn. Sup. Ct. R. 23, § 1. But when we find "a reasonable clear and principled course" to follow, we disfavor certifying even unsettled

questions. *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). We also prefer when litigants ask the district court to certify a question before it rules, rather than waiting to receive "an unfavorable ruling." *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 649 (6th Cir. 2013) (citation omitted).

Tennessee law already answers Plaintiffs' question. But even if it did not, the other factors above would counsel against certifying the question to the Tennessee Supreme Court. So we will deny Plaintiffs' motion.

B. Federal-Law Claims

The Captains also argue that the district court erred in granting summary judgment to Knox County and Knox County Schools on their federal claims. Their arguments on appeal are two-fold: that we should not permit Knox County and Knox County Schools to raise their timeliness defense and that, in the alternative, Plaintiffs timely filed their charges of discrimination. We take each in turn, reviewing the district court's determination that Defendants did not forfeit their argument for abuse of discretion. *See Rogers*, 822 F.3d at 856.

1. Whether Knox County and Knox County Schools Can Raise the Timeliness Defense

In the Captains' view, Defendants twice forfeited their timeliness defense and, even if it were preserved, they should be equitably estopped from raising it. The first forfeiture is alleged to have occurred when Knox County and Knox County Schools failed to raise the defense to the EEOC during its investigation. The second alleged forfeiture happened when Defendants waited to argue that the Captains knew of their inevitable termination in May 2016 until they had sufficient evidence, at summary judgment. And the Captains say that equitable estoppel is appropriate to make up for misconduct that took place during discovery. None of their arguments is supported by any authority.

First, the Captains ask us to break new ground and hold that any defense not raised to the EEOC is forfeited in a later lawsuit. They also argue that Knox County and Knox County Schools' answer—which generally pleaded and relied on any statute-of-limitations defenses—could not preserve this issue for summary judgment. Instead, they had to make this specific, summary-judgment argument at an earlier, unspecified stage in the litigation. But the general rule is that an affirmative, statute-of-limitations defense must be raised in a defendant's answer. *See Wood v. Milyard*, 566 U.S. 463, 470 (2012); Fed. R. Civ. P. 8(c). Neither the statute governing EEOC proceedings nor any caselaw suggests that Congress or the federal courts have established an exception to that rule. We therefore reject both forfeiture arguments.

The Captains also argue that equitable estoppel should relieve them from the EEOC's filing deadline. Their argument boils down to a request that we find Knox County and Knox County Schools' discovery misconduct so egregious that we equitably estop them from raising their timeliness defense. We reject that request for two reasons. For one, the Captains misunderstand estoppel, which protects a party that has relied "on a misleading representation" made by another party and suffered "an injury or detrimental change in position resulting from that reliance." *See Estoppel*, Black's Law Dictionary (11th ed. 2019). The Captains cannot have been relying on Defendants' discovery misconduct—which took place in 2020—when they failed to timely file charges of discrimination in 2017. Estoppel does not fit here. Second, they waived any challenge to the district court's evidentiary decision. So they cannot use equitable estoppel as a backdoor to appeal that decision now.

2. Whether the Captains' Charges of Discrimination Were Timely Filed

We turn next to the timeliness defense. The limitations period in 42 U.S.C. 2000e-5(e)(1) "does not begin to run . . . until an employer makes and communicates a final decision to the

employee." *EEOC v. United Parcel Serv., Inc.*, 249 F.3d 557, 561–62 (6th Cir. 2001) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). And that final decision is communicated "[o]nce the employee is aware or reasonably should be aware of the employer's decision[.]" *Id.* The focus is on "when the plaintiff learns of the employment decision itself," not when he learns it "may have been discriminatorily motivated." *Amini v. Oberlin Coll.*, 259 F.3d 493, 499 (6th Cir. 2001). Or as the Supreme Court put it in *Ricks*, the clock starts ticking "upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts become most painful." 449 U.S. at 258 (quotation omitted).

The retaliation alleged by the Captains was Knox County Schools' termination of their employment as security officers after their bond cards were revoked. Their bond cards were officially revoked by Sheriff Jones on May 6, 2016.[2] And Bell was informed on May 18, 2016, that because of the bond-card revocation, Knox County Schools would "be separating Mr. Bill Kee, Mr. Doug Ryerkerk and Mr. Dan Stewart from their current positions in the School Security Department as of June 1, 2016."

The Captains do not dispute that Bell's knowledge of the Dupler letter on May 18, 2016, can be attributed to them. Rather, they argue that the Dupler letter does not reflect a final decision; instead, it proves only that the Captains *might* have been fired. To support that conclusion, they argue that the Captains were negotiating with Knox County Schools and still could have received "a position with comparable pay and responsibilities" to avoid this dispute.

---

[2] Defendant Knox County points out that its only alleged retaliatory act was the revocation of the Captains' bond cards. The Captains do not dispute that this decision was communicated to them, at the latest, on May 18, 2016, so we will affirm the district court's grant of summary judgment to Knox County on that basis.

The Captains contend that a final decision about a comparable position was on the table until June 14, 295 days before they filed charges of discrimination. The affidavit they cite betrays that conclusion: Stewart says he "was never offered a job that had similar pay and duties as my investigator position." And in their depositions, the Captains acknowledged that the school offered them only positions as a teacher's aide or assistant. Simply put, no evidence supports the Captains' conclusion that their removal from their security officer positions was "in a serious state of flux" after their bond cards were revoked or that comparable positions were available.

The Captains also argue that the difference between the anticipated termination date mentioned in the Dupler letter (June 1) and their actual termination date (June 14) means that Knox County Schools' decision was not yet final. The Dupler letter said that Knox County Schools "will be separating" the Captains from their positions "as of June 1, 2016." Because the separation did not occur until June *14*, the Captains argue that the word "will" loses its finality. It could only be considered final, they argue, if Knox County Schools followed through on that date. They pose "a ludicrous extreme" to explain their argument: if the phrase "will be separating" here always means a final decision was communicated, would the Captains' deadline still have been March 13, 2017, even if they were fired in August 2021? Appellants' Br. at 47.

But the Captains' hypothetical does not create a genuine issue of fact over whether Knox County Schools' decision was final or tentative. By May 18, 2016, at the latest, the Captains knew that their bond cards would not be restored. And they testified that Paidousis required each security officer to have a bond card, even admitting that other officers were terminated because they lacked a bond card. As the district court noted, the evidence suggests that the Captains knew "that they were going to be terminated generally, which is what matters." Their exact date of their termination does not change the finality of Knox County Schools' decision to terminate them.

One final example is worth considering. In *Ricks*, the EEOC argued that the existence of a grievance procedure rendered the earlier decision tentative. But the Court held that even the employers' indication of "a willingness to change its prior decision" did not "suggest that the earlier decision was in any respect tentative." *Ricks*, 449 U.S. at 261. One court interpreting that holding held that "more than mere reconsideration" was necessary to treat an initial decision as tentative. *Currier v. Radio Free Eur./Radio Liberty*, 159 F.3d 1363, 1367 (D.C. Cir. 1998) (finding a genuine issue over finality where "an authoritative voice . . . expressly disavowed the finality of the initial determination"). But the Captains here have not cast similar doubt on what the weight of the evidence suggests: Knox County Schools decided to terminate them when Sheriff Jones revoked their bond cards.

Nothing in the record shows that, by taking longer to execute its final decision than it first planned, Knox County Schools intended its decision to terminate the Captains, as communicated in the letter of May 16, 2016, to be tentative. And the Captains knew about that decision on May 18, 2016, 322 days before filing charges with the EEOC. The district court's grant of summary judgment was proper.

### III.

Plaintiffs' missteps throughout this litigation prevent a federal court from hearing their claims. No doubt, that ruling is disappointing. But sometimes deadlines are deadlines, and Plaintiffs have identified no good reason for us to excuse them here. We affirm the judgment of the district court and deny Plaintiffs' motion to certify a question to the Tennessee Supreme Court.